THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 2:06-cr-00010-MR-WCM-1

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| BRUCE LEE RICHARDSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. 143].

**I.    BACKGROUND**

The Defendant Bruce Lee Richardson was born in the United States Virgin Islands in 1980 and was adopted at two months old. [Doc. 81: PSR at ¶ 61]. In 1989, at the age of 9, Richardson moved to the mainland United States with his adoptive family. [See id.]. Richardson moved often throughout his childhood and dropped out of school after the eighth grade. [Id. at ¶¶ 61, 67]. He began using drugs at sixteen years old. [Id. at ¶ 66]. He fell in with a local gang and began committing criminal offenses, the most serious for which he served three months in jail when he was nineteen years old. [Id. at ¶¶ 48-54]. At the time of the first offense in this case, Mr.

Richardson was twenty-five years old and was a regular user of crack cocaine. [Id. at ¶ 66].

Between September 2005 and February 2006, Richardson and two accomplices—Orestes Aleman and his son, Alberto Aleman—committed the armed robbery of three banks in western North Carolina. [Id. at ¶¶ 6-9]. Orestes Aleman provided his son and Richardson with weapons for the robberies. [Id. at ¶ 10]. During each of the robberies, Richardson displayed a firearm and ordered customers and bank personnel to get on the ground. [Id. at ¶¶ 6-8]. During one of the robberies, the bank branch manager was brought from his office at gunpoint; placed on the floor with other bank personnel; and warned that if he moved, he would be killed. [Id. at ¶ 7]. Richardson and his accomplices stole more than $56,800 in cash. [Id. at ¶ 12]. The money stolen during these robberies was used to pay the Aleman family bills. [Id. at ¶ 10].

A federal grand jury indicted Richardson and charged him with three counts of bank robbery, in violation of 18 U.S.C. § 2113(a); three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(d); three counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and three counts of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). [Doc. 8]. Richardson entered into

2

Case 2:06-cr-00010-MR-WCM   Document 148   Filed 10/29/21   Page 2 of 12

a plea agreement with the United States, agreeing to plead guilty to two of the bank robbery offenses and two of the § 924(c) firearm offenses. [Doc. 17 at ¶ 1]. In exchange for Richardson's guilty plea, the United States agreed to dismiss the remaining counts against Richardson. [Id. at ¶ 2].

This Court's probation office submitted a presentence report and calculated a total offense level of 24 for the bank robbery offenses. [Id. at ¶ 43]. When this offense level was combined with a criminal history category of III, the Sentencing Guidelines advised a sentence of between 68 and 78 months in prison for the bank robbery offenses. [Id. at ¶ 74]. Pursuant to the version of 18 U.S.C. § 924(c) in effect at the time of sentencing, this Court was required to sentence Richardson to a consecutive term of seven years in prison for the first § 924(c) conviction and to a consecutive term of 25 years in prison for the second § 924(c) conviction, for an aggregate consecutive term of 32 years in prison. [Id. at ¶ 73]. This Court sentenced Richardson to concurrent terms of 21 months in prison for the bank robberies and to a consecutive aggregate term of 32 years in prison for the firearm offenses, for a total term of 405 months' imprisonment. [Doc. 50: Judgment at 2].

Richardson now has approximately 207 months of credited time in the Bureau of Prisons. [See Doc. 144-1 (email calculating time as of Aug. 12,

2021)]. Richardson has incurred nine disciplinary citations between 2010 and May of 2020, including a citation for assault without serious injury.[1] [Id.]. Richardson has completed 68 educational or work programs, including his GED. [Id.; see also Docs. 143-1, 143-2]. For the last seven years, Richardson has been assigned to the Food Service detail, and he is currently assigned as a chef in the Staff Dining Room, a position that requires a high level of responsibility and trust. [See Doc. 143-3: Baird Decl. at ¶ 42]. Additionally, Richardson has renounced his gang affiliation of his youth and currently lives in a "gang dropout yard" at FCI Butner reserved solely for those who pass extensive screening to ensure they have truly relinquished all gang affiliation. [See id. at ¶ 15].

Richardson now has support from family, which he did not have when he was younger. [Doc. 143-7, Letters from Family and Friends]. Richardson's family has pledged their support upon his release, including offering him transportation, help in securing a job, and a place to stay if needed. [See id.]. Richardson has already secured his own place to live

---

[1] Richardson's disciplinary record while in prison has been relatively minor. The most serious offense occurred in May 2020, when Richardson was charged with the non-injurious assault of another inmate, who had accused Richardson of stealing postage stamps. [See id.; Doc. 143-3: Baird Decl. at ¶ 22]. This, however, appears to have been an isolated incident and Richardson's only act of aggression in his more than fifteen years of incarceration.

4

through Crossroads Reentry upon release. [Doc. 143-8, Letter of Acceptance from Crossroads Reentry]. This Charlotte-based reentry organization will help Richardson find employment, sober living housing, and any other resources he may need. [Id.].

On March 7, 2019, Richardson filed his first *pro se* motion for a reduction in sentence. [Doc. 135]. On July 1, 2019, the Court denied this motion. [Doc. 136]. On July 16, 2020, Richardson filed a second *pro se* motion. [Doc. 137]. This motion was denied on July 27, 2020. [Doc. 138]. Richardson filed the present compassionate release motion on June 23, 2021. [Doc. 143]. For grounds, Richardson asks this Court to grant him compassionate release because of the "gross disparity" between his current sentence and those sentenced under 18 U.S.C. § 924(c) today, the lengthy mandatory sentence he is currently serving, his relative youth at the time of the offenses, and his extensive rehabilitation during the fifteen years he has already served. [Id. at 1].

The Government opposes the Defendant's motion. [Doc. 144].

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling

5

reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government does not dispute that Richardson has sufficiently exhausted his administrative remedies with BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. Specifically, the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a

serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

While acknowledging that the Court is authorized to find that Richardson has shown extraordinary and compelling reasons for his release, the Government argues that, "for the sake of consistency," the Court should adhere to the policy statement outlined in § 1B1.13 in evaluating Richardson's request. [Doc. 144 at 6]. The policy statement set forth in § 1B1.13, however, is not binding on this Court. Section 1B1.13 was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted

to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, while this policy statement "remains helpful guidance even when motions are filed by defendants," id. at 282 n.7, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

Here, Richardson relies on a recent change in sentencing law as a basis for his request for compassionate release. Section 403(a) of the First Step Act of 2018 amended 18 U.S.C. § 924(c) to remove the possibility that a defendant will received "stacked" § 924(c) sentences by requiring that the 25-year mandatory minimum that applies for a second or successive § 924(c) conviction applies only "when a prior § 924(c) conviction arises from a separate case and already has become final." First Step Act of 2018 § 403(a), Pub. L. No. 115-391, 132 Stat. 5194, 5222. This amendment did not

8

apply retroactively to sentences imposed before December 21, 2018, the effective date of the First Step Act. Id. § 403(b). Therefore, Richardson was not entitled to seek a reduction of his sentence under this provision.

In McCoy, however, the Fourth Circuit recognized that district courts may "consider changes in sentencing law as part of the 'extraordinary and compelling reasons' inquiry." 981 F.3d at 287-88. Specifically, in McCoy, the Fourth Circuit affirmed the district courts' findings that "the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." Id. at 285. "Nothing in McCoy, however, requires the court to reduce a defendant's sentence once the defendant shows that new statutory or case law would have benefitted the defendant, if such law had existed at the time of the defendant's sentencing." United States v. Spencer, 521 F. Supp. 3d 606, 610 (E.D. Va.), aff'd, 853 F. App'x 833 (4th Cir. 2021). Rather, the Court cautioned that the determination of whether a sentence reduction should be based on a "full consideration of the Defendant's individual circumstances," including the length of time already served, any rehabilitative efforts made while incarcerated, the defendant's prior criminal history, and the defendant's age at the time of the offense. McCoy, 981 F.3d at 286.

Here, Richardson is serving a 405-month sentence. That is a sentence of nearly 34 years—32 years of which are due to the now-prohibited "stacking" of consecutive § 924(c) sentences. The parties agree that if Richardson were re-sentenced today, he would likely receive consecutive seven-year sentences for his two § 924(c) convictions, which, when combined with a 21-month term for the bank robbery offenses, would result in an aggregate sentence of 189 months. [Doc. 143 at 19; Doc. 144 at 5]. Richardson has served approximately 187 actual months in prison; with good time credit, he has credit for more than 210 months. In light of the severity of the Defendant's stacked § 924(c) sentences, combined with the enormous disparity between that sentence and the sentence he would likely receive today, the Court concludes that the Defendant has established an "extraordinary and compelling" reason for his release.

Having determined that an extraordinary and compelling reason exists, the Court next considers the § 3553(a) factors, as "applicable," to determine whether a sentence reduction is warranted. See 18 U.S.C. § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Richardson's prior history consists of a theft and burglary offense involving the theft of jewelry valued at over $300, for which he served one year in prison, and a misdemeanor battery conviction. Richardson was 26

years old when he was arrested for the offenses of conviction. His lack of a serious criminal history and his relative youth at the time of the offenses weigh in favor of his release. Further, as noted above, there is an 18-year disparity between the sentence Richardson received for his § 924(c) convictions in 2007 and what he would likely eceive today. If sentenced today, Richardson would likely receive consecutive seven-year sentences for his two § 924(c) convictions, totaling 14 years. This is significantly lower than the 32-year sentence he received for these two convictions in 2007. Thus, granting Richardson compassionate release would not create any unwarranted sentencing disparities.

Additionally, Richardson's rehabilitative efforts while in prison have been exceptional. He has completed an impressive number of education programs and work assignments, including obtaining his GED. He has obtained a position of trust and great responsibility in the staff dining hall, and his disciplinary record in prison is relatively minor. Finally, Richardson appears to have a stable release plan with housing and opportunities for service upon his release.

For all these reasons, the Court concludes that the relevant § 3553(a) factors weigh in favor of granting the requested relief. Accordingly, the Defendant's Motion for Compassionate Release is granted.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) [Doc. 143] is **GRANTED**, and the Defendant's sentence is hereby **REDUCED** to a sentence of **TIME SERVED PLUS FOURTEEN (14) DAYS.** The Bureau of Prisons shall place the Defendant in quarantine for a minimum period of **ten (10) days** immediately prior to his release.

The Clerk of Court is respectfully instructed to provide copies of this Order to the Defendant, counsel for the Government, counsel for the Defendant, the Bureau of Prisons, and the United States Probation Office.

**IT IS SO ORDERED.**

Signed: October 28, 2021

Martin Reidinger
Chief United States District Judge